# EXHIBIT 1

## TERM SHEET

The following sets forth the material terms of the agreement ("Agreement"), dated as of October 14, 2008, between Golden Boy Promotions, Inc. ("Promoter") and James Kirkland ("Boxer") regarding the grant of Boxer's exclusive promotional rights to Promoter.

1. **Term / Bouts:** Commencing as of the date of full execution hereof and continuing for a period of five years thereafter, subject to the terms hereof (the "Term").

2. **Rights:** Boxer hereby grants to Promoter the exclusive right to promote all professional boxing matches in which Boxer participates during the Term (the "Bouts" and each, a "Bout"). Boxer agrees that during the Term: (a) Boxer shall not engage in any boxing match other than Bouts promoted by Promoter under this Agreement; and (b) neither Boxer nor anyone acting on Boxer's behalf shall negotiate for nor contract for Boxer to engage in any boxing match other than Bouts promoted by Promoter under this Agreement.

3. **Signing Bonus:** Subject to Boxer's (and his managers') signature of this Agreement in accordance with all "Commission" (as defined below) requirements and Promoter's approval of Boxer's medical evaluation, and provided that Boxer is not in breach hereunder, then in consideration of Boxer's grant of exclusive promotional rights to Promoter hereunder, Boxer shall be entitled to a one-time signing bonus in the amount of $100,000, which shall be payable as follows: $25,000 upon signature of this Agreement and $25,000 upon the completion of each of Boxer's first three Bouts hereunder.

4. **Bouts / Purses:**
   (a) Subject to any default, illness, injury or other unavailability of Boxer, Promoter shall offer Boxer the right to participate in no less than four bouts per year during the Term. As used herein, each "year" is defined as each successive twelve-month period commencing upon the date of full execution hereof. Notwithstanding the foregoing, if Boxer wins a "Major World Title" (i.e., IBF, WBA, WBC or WBO world title, including interim titles) during the Term, then the annual minimum number of bouts shall be reduced to two.

   (b) Boxer's purse for each Bout hereunder shall be no less than $150,000, provided that during each year in which Promoter is required to offer Boxer a minimum of four bouts, the purse for one such bout the $150,000 minimum purse shall not apply, and instead Boxer's purse shall be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account Boxer's opponent, the license fee received by Promoter and other similar factors.

   (c) In addition to the purse described above, for each Bout hereunder, Promoter shall pay a $10,000 training expense allowance directly to Boxer's chief trainer.

5. **Bout Arrangements:** (a) Boxer's opponent for each Bout will be selected by Promoter, subject to the approval of Boxer and "Managers" (as defined below) (which approval shall not be unreasonably withheld).

6126.3.2
October 15, 2008

SBE/jm
464227.2

(b) For each Bout promoted by Promoter hereunder, Promoter shall provide Boxer with the following (for use by Boxer and Boxer's personnel): (i) five round-trip coach airfares (on an if available, if used basis) from the major U.S. airport nearest Boxer's training camp to the major airport nearest to the city of the Bout; (ii) five standard hotel rooms, and per diems or meal coupons for ffive persons for such period of time prior to the Bout as determined by Promoters in good faith; and (iii) six complimentary tickets of admission in the highest-priced section; provided for any Major World Title (excluding interim titles) bout, Promoter shall provide six flights, six rooms and six per diems and an additional number of complimentary tickets of admission to be negotiated in good faith. In addition, Promoter shall provide a reasonable number of credentials for each Bout for use by Boxer and Boxer's personnel (including Managers).

(c) In the event that Boxer is the featured ("A-side") boxer in a bout which is the main event of the boxing card of which it is a part ("Main Event Bout"), Boxer will be entitled to receive 80% of the "Net Bout Revenues" derived from such Bout. Boxer's purse for such Bout (as mutually agreed by Boxer, Managers and Promoter) shall constitute an advance against Boxer's 80% share of Net Bout Revenues. "Net Bout Revenues" shall be defined as any and all revenues actually received by Promoter from the promotion, distribution and exploitation of the Bout, including, without limitation, television license fees, pay-per-view revenues, site fees/gate revenues, sponsorships, merchandising and ancillary rights ("Bout Revenues"), less all costs and expenses related to opponent purses and expenses, undercard purses and expenses, promotion, publicity and travel, insurance, facility-related expenses, payments to other promoters, official fees and expenses, sanctioning fees, television and production expenses and any other actual, out-of-pocket costs and expenses relating to staging and distributing the applicable Bout ("Bout Expenses"). Promoter agrees that all Bout Expenses shall be reasonable and consistent with boxing industry custom and practice for bouts of similar stature.

(d) Notwithstanding anything to the contrary contained herein, if any Bout hereunder is subject to a purse bid ("Purse Bid Bout"), Promoter shall submit a good faith bid for such bout, provided that Boxer agrees that the amount of such bid shall be determined in Promoter's sole discretion and shall not be tied to Promoter's minimum purse obligations hereunder. If Promoter wins the applicable purse bid, then: (i) Boxer agrees that Boxer's purse for such Purse Bid Bout shall be an amount equal to 80% of the amount which he would otherwise be entitled to receive pursuant to the rules and regulations of the applicable sanctioning organization (and Boxer acknowledges that he has granted Promoter a 20% reduction in the amount of the purse which he would otherwise be entitled to receive because Boxer understands and agrees that it is in his interest for Promoter to win the rights to all Purse Bid Bout); and (ii) the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout. If Promoter submits a bid but does not win, then: (i) Promoter's rights hereunder shall continue in full force and shall not be affected in any way; (ii) Promoter shall be entitled to receive, and Boxer shall direct the applicable promoter of the Purse Bid Bout to pay directly to Promoter, an amount equal to 20% of Boxer's gross purse for such purse bid bout, which

8126.3-2
October 15, 2008

2

payment shall be delivered to Promoter within three business days after the applicable bout; and (iii) Boxer's obligations hereunder shall continue immediately following the Purse Bid Bout, provided that the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout.

(e) Promoter shall be the exclusive owner of all rights in and to the Bouts, in all media throughout the world in perpetuity, and Boxer's grant of rights hereunder includes all rights required to arrange, stage and sell tickets of admission to the Bouts; all exclusive worldwide rights to, without limitation, broadcast, telecast, record, film and transmit electronically such Bouts for exhibition in all media; all merchandising and other ancillary and subsidiary rights therein; the unrestricted worldwide right to use, reproduce and display Boxer's name, voice, likeness and/or biography in connection with the advertising, promotion and exploitation of all such Bouts and any related activities (and all rights therein) and Boxer's career and Promoter's activities in general. Notwithstanding the foregoing, but subject to any restrictions in the applicable television license agreements, Promoter grants to Boxer the non-exclusive right to use clips of each Bout in aggregate length of no more than the lesser of: (i) fifty percent of the length of such Bout; or (ii) three minutes, solely for publicity and promotion of Boxer, provided that such use shall provide the applicable network with an on-screen courtesy credit and shall exclude all commentators, ENG pieces, music, graphics and clips (unless otherwise separately cleared by Boxer).

6. Publicity/Sponsorship: Boxer agrees to cooperate and assist in publicizing, advertising and promoting each Bout hereunder and to appear at and participate in a reasonable number of press conferences, interviews and other publicity appearances and activities at times and places designated by Promoter. Except for the names of athletic equipment manufacturers appearing on Boxer's equipment in a reasonable size, location and placement, Boxer agrees that no advertising or promotional material shall appear on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at the Bout or any related event without the prior written approval of Promoter. In any event, no advertising or promotional material appearing on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event shall conflict with any sponsor of the Event or the site; shall display the name, logo or identification of any hotel, casino or gaming, wagering, betting or line service, or any other entity involved with gaming, wagering or betting lines; be in the form of a body or other temporary tattoo or artwork; or be lewd, obscene or otherwise inappropriate (as determined by Promoter and/or the applicable television network in its absolute discretion) for display to the intended live and/or television audience(s).

7. Cancellation / Postponement: In the event that: (a) Boxer fails or is unable to perform any obligation hereunder due to any illness, injury or disability or due to an order of the Commission or other legal or regulatory entity or as a result of Boxer's breach or non-performance hereunder; or (b) any Bout scheduled under this Agreement is postponed, or Promoter's performance hereunder is prevented or material impeded, as a result of any reason provided in the immediately preceding clause (a) or in the applicable Bout Agreement, or due to an event of force majeure,

6125.1.2
October 15, 2008

3

SBE/fm
464237.2

disaster, labor action, power outage or other reason beyond Promoter's reasonable control, then Promoter shall have the right to extend the Term for the period of the applicable event causing the postponement or other delay.

8. Extension/ Termination:

Boxer agrees to promptly submit to such reasonable medical examinations and provide such information (including full disclosure of all past or present injuries, medical conditions or surgical procedures) as Promoter may request in order to establish Boxer's physical ability to participate in Bouts hereunder. All of Promoter's obligations hereunder are conditioned upon Promoter's review and approval, in its sole discretion, of the results of Boxer's medical exams and disclosures. If during the Term, Boxer wins a Major World Title, then the Term of this Agreement, and Promoter's rights hereunder, shall be extended for five additional Bouts beyond the term set forth in Paragraph 1 above. If during the Term: (a) Boxer becomes a party to any agreement with a media network or outlet; or (b) any such agreement with a media network or outlet to which Boxer is a party is extended, then the Term of this Agreement shall be extended so that it is coterminous with the complete period of the term of any such agreement. Notwithstanding anything to the contrary contained herein, in no event shall the term of this Agreement extend beyond the maximum term permitted by any applicable law or regulation. In the event that Boxer is not declared the winner of any professional boxing match during the Term, Boxer's minimum purse shall thereafter be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account Boxer's opponent, the license fee received by Promoter and other similar factors. Promoter shall have the right to terminate this Agreement if: (a) Boxer loses two Bouts during the Term; (b) Boxer fails to engage in any Bout hereunder; (c) Boxer engages in any activity or conduct which is illegal, which violates any applicable law or governmental, regulatory or sanctioning body rule or regulation, or which subjects Boxer or Promoter to public ridicule, scorn, contempt or embarrassment; or (d) Boxer is in breach of any of his obligations to Promoter.

9. Representations:

Boxer represents and warrants that Boxer is not subject to any agreements, obligations, options or other commitments which would conflict or interfere with Promoter's rights hereunder; and that there are no claims, disputes or litigation pending or threatened with respect to Boxer's promotional rights (other than Donaire and Kirkland vs. Gary Shaw Productions, LLC (Case No. 08 CV 6135) and the related counterclaims (the "GSP Lawsuit")). Boxer shall indemnify and hold harmless Promoter and Promoter's shareholders, officers, employees representatives and affiliates from and against any and all claims, damages, judgments and expenses (including, without limitation, reasonable legal fees and expenses) (collectively, "Claims") arising out of arising out of (i) any breach (or with respect to third party claims, alleged breach) of this Agreement, or any representation or warranty contained herein, by Boxer or (ii) any act or omission by Boxer giving rise to a claim against Promoter (other than the GSP Lawsuit and/or any claims against Promoter by Gary Shaw Productions, LLC). Promoter shall indemnify and hold harmless Boxer from and against any and all Claims arising out of (i) any breach (or with respect to third party claims, alleged breach) of this Agreement, or any representation or warranty contained herein, by Promoter or (ii) any act or omission by Promoter giving rise to a claim against Boxer (other than claims relating to the GSP

8178.3.2
October 15, 2008

4

SBE/rm
464337.3

Lawsuit). Boxer's and Promoter's indemnification obligation shall survive the termination of this Agreement.

10. **First Negotiation and Last Refusal:** Upon expiration or termination of the Term, the parties will negotiate exclusively in good faith for a period of at least twenty days regarding a new promotional agreement between Boxer and Promoter. In the event Promoter and Boxer fail to reach agreement within such twenty-day period, Promoter shall be entitled to a right of last refusal regarding any offer received by Boxer within one year after the expiration of the Term (i.e., Boxer shall not be entitled to enter into a new bout and/or promotional agreement with any third party without first giving Promoter a ten-day right to enter into an agreement with Boxer upon the same terms as contained in the third party offer (a copy of which shall be provided to Promoter by Boxer), provided that Promoter shall not be required to match any terms which cannot be met as easily by one party as by another).

11. **Compliance:** Boxer agrees to perform such additional acts, make such appearances (before any applicable Commission or otherwise), and to execute and deliver such documents and instruments, as Promoter may deem necessary or desirable to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement and the transactions contemplated by this Agreement, and to guarantee the legal effectiveness of this Agreement. For each Bout, Boxer shall execute and comply with the terms of Promoter's customary Bout Agreement and the bout contract required by the applicable athletic or boxing commission and shall cooperate as required by Promoter to comply with any applicable law or regulation. Boxer agrees to comply with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities (collectively, the "Commission").

12. **Taxes:** Boxer shall be solely responsible for payment of any and all taxes relating to amounts payable to Boxer hereunder. Promoter shall deduct from any payment made to Boxer hereunder all amounts required by federal, state and/or local taxing authorities to be withheld or collected by Promoter, as well as any other tax or payment imposed upon or to be imposed upon Promoter in connection with amounts payable to Boxer hereunder. In the event that any tax, penalty or other payment is imposed upon or charged to Promoter in connection with the amounts payable to Boxer hereunder, then Promoter shall be entitled to deduct such amount from the purse or any other monies payable to Boxer, or at Promoter's election and upon Promoter's request, Boxer shall immediately reimburse Promoter for any such tax, penalty or payment.

13. **Governing Law:** This Agreement will be governed and construed in accordance with the laws of the State of California applicable to agreements entered into and wholly performed therein. All parties hereto submit to the exclusive venue and jurisdiction of the state and federal courts sitting in Los Angeles County with respect to any dispute resulting from this Agreement. Nothing contained in this Agreement shall be construed so as to require the violation of any law or regulation, and wherever there is any conflict between any provision of this Agreement and any law or regulation, the applicable law or regulation shall prevail; provided, however, that in such event the provision so affected shall be curtailed only to the extent necessary to permit compliance with the minimum legal requirement, and no other provisions of this Agreement shall be affected

8128.3.2
October 15, 2005

5

thereby. Promoter shall have the right to assign, license or transfer any or all of the rights granted to or retained by it under this Agreement to any person, firm or corporation, provided that Richard Schaefer shall remain actively involved in the promotional activities hereunder. Neither the benefits nor the duties of Boxer under this Agreement may be assigned or transferred for any reason.

14. **Commissions:** Subject to the rules of the applicable Commission, Boxer hereby authorizes and instructs Promoter to deduct an amount equal to 32.5% of all gross purses and signing bonuses payable to Boxer hereunder and to pay such amount as set forth below concurrently with any payments due to Boxer hereunder:

- 17.5% to Boxer's co-managers, Michael Miller and Cameron Dunkin (collectively, "Managers") (i.e., 7.5% to Miller and 10% to Dunkin);
- 7.5% to Ann Wolfe; and
- 7.5% to Donald "Pops" Billingsley.

Boxer shall have the right to modify such payment instructions by written notice to Promoter. Boxer and Managers acknowledge that payment in accordance with the foregoing shall fully satisfy Promoter's payment obligations hereunder. Notwithstanding anything to the contrary contained herein, no expiration or termination of any agreement between Boxer and Managers shall affect Promoter's rights hereunder.

15. **Additional Terms:** Promoter and Boxer may enter into a more formal agreement incorporating the terms hereof and Promoter's customary standard terms and conditions, but until such more formal agreement is executed, this Agreement and such standard terms and conditions (which are incorporated herein by this reference) shall constitute the entire understanding of the parties hereto and shall constitute a legal and binding agreement between the parties. Boxer agrees that in no event shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief or to otherwise terminate or rescind this Agreement. Boxer's sole remedy shall be an action at law for actual damages. No waiver by Promoter of any breach or non-performance by Boxer hereunder shall be deemed to be a waiver of any preceding or succeeding breach or non-performance. No modification or amendment of this Agreement shall be valid unless made by a writing signed by the party to be charged. The terms of this Agreement shall remain confidential and shall not be disclosed by Boxer or Boxer's representatives without the written consent of Promoter (except to the extent necessary to comply with tax disclosure or other legal requirements).

By its signature below, each party confirms its understanding of and agreement to the foregoing.

PROMOTER:

GOLDEN BOY PROMOTIONS, INC.

By: _____
Title: DIRECTOR
Date: 10/15/07

BOXER:

_____
JAMES KIRKLAND
Date: 10-15-07

By countersigning this Agreement, each of the undersigned parties grants his approval of the Agreement, confirms all representations, warranties and agreements made by Boxer pursuant to the Agreement and

6

agrees to cause Boxer to fully perform and comply with all terms, conditions and obligations set forth in the Agreement. Each of the undersigned parties agrees to comply, and agrees to cause Boxer to comply, with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities.

_[signature]_
MICHAEL MILLER
Licensed Manager for James Kirkland
Date: 10/15/08

_[signature]_
ANN WOLFE
Trainer and Licensed Manager for James Kirkland
Date: 10/15/08

CAMERON DUNKIN
Licensed Manager for James Kirkland
Date: _____

DONALD "POPS" BILLINGSLEY
Trainer for James Kirkland
Date: _____

5125.5.2
October 15, 2008

7

SBEM
464287.2